**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **12-03940-jw**

# ORDER OVERRULING OBJECTION TO CLAIM

The relief set forth on the following pages, for a total of 8 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**05/14/2013**



_/s/ John E. Waites_
US Bankruptcy Judge
District of South Carolina

Entered: 05/14/2013

**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 12-03940-JW |
| | Chapter 13 |
| James Patrick Booth & Erin Reilley Booth, | |
| Debtor(s). | **ORDER OVERRULING OBJECTION TO CLAIM** |

This matter comes before the Court on the objection ("Objection") by James Patrick Booth and Erin Reilley Booth ("Debtors") to the claim of First Federal Bank ("First Federal"). Debtors object to First Federal's proof of claim on the basis that First Federal has failed to provide any documents in support of its claim, the foreclosure action related to 108 Besselieu Court Bluffton, SC 29910 (the "Property") has not yet been completed, any deficiency owed to First Federal related to the Property is unknown, and First Federal has failed to mitigate its damages. First Federal responded to the Objection and contends that, based on the foreclosure proceedings commenced by the holder of the first in priority mortgage on the Property, there is not sufficient value to pay its mortgage and, thus, First Federal properly filed an unsecured claim along with the necessary documentation, including a copy of the note, the mortgage, and loan payoff inquiry. A hearing on the Objection was held on May 2, 2013 (the "Hearing"). This Court has jurisdiction over this Objection and the relief requested therein pursuant to 28 U.S.C. §§ 157(a) and 1334(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. Pursuant to Fed. R. Civ. P. 52, which is made applicable to contested matters by Fed. R. Bankr. P. 7052 and 9014(c), the Court makes the following findings of fact and conclusions of law:[1]

---

[1] To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such, and to the extent any conclusions of law constitute findings of fact, they are so adopted.

## FINDINGS OF FACT

1. Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on June 26, 2012 (the "Petition Date").

2. According to Debtors' Schedule A, Debtors valued the Property at $220,000. Debtors have made no amendments to Schedule A as of the date of this Order.

3. According to Debtors' Schedule D, CitiMortgage holds a claim of $293,981.91 secured by a first mortgage against the Property. Debtors scheduled a deficiency claim for CitiMortgage in the amount of $73,981.91.

4. According to Debtors' Schedule D, First Federal holds a claim of $78,013.40 against Debtors secured by a second mortgage against the Property. Debtors scheduled the unsecured portion of First Federal's claim in the amount of $78,013.40.

5. The deadline to file a proof of claim in this case was October 22, 2012.

6. On July 16, 2012, First Federal filed an unsecured proof of claim in the amount of $77,996.92.

7. Debtors filed a Chapter 13 plan on the Petition Date, which was subsequently amended on August 1, 2012 (together with the amendments, the "Plan"). The terms of the Plan provided for the surrender the Property, allowing CitiMortgage and First Federal to file "an itemized proof of claim for any unsecured deficiency within a reasonable time after the surrender of the property." Plan at § IV.B.6. The Plan also stated that Debtors proposed to "pay 100% of general unsecured claims with 5.25% interest." Plan at § IV.E.

8. No objections to the Plan were filed and the Plan was confirmed on August 3, 2012.

9. On February 5, 2013, the Chapter 13 trustee, James M. Wyman ("Trustee"), filed

a Petition to Dismiss Case.

10. On February 13, 2013, Debtors, in an apparent response to the Trustee's Petition to Dismiss Case, filed their Objection to First Federal's claim.

11. At the Hearing on the Objection, Debtors argued that First Federal's claim should be disallowed because First Federal had not yet commenced its own foreclosure proceeding or obtained some other form of determination regarding the calculation of its unsecured deficiency claim. Debtors did not contest the amount or validity of First Federal's claim. In support of their Objection, Debtors hypothesized about a possible foreclosure sale where both CitiMortgage and First Federal received payment in full satisfaction of their claims. Debtors also argued that the allowance of First Federal's claim could jeopardize the Plan and Debtors' ability to remain in Chapter 13. Counsel for Debtors indicated Debtors' Schedules I and J and Statement of Current Monthly Income would require amendment if the First Federal proof of claim was allowed. According to counsel for Debtors, his clients are still residing in the Property and using monies otherwise available for housing expenses to fund plan payments.

12. Trustee asserted a concern over the information in Schedules I and J and requested that either amendments be filed or corroborating documents be provided.

13. In response to Debtors' position, First Federal argued that it was entitled to file an unsecured claim based on its rights under the note and the valuation of the Property provided in Debtors' bankruptcy schedules. First Federal noted that CitiMortgage had commenced foreclosure proceedings but those proceedings had not yet been referred to the Master-In-Equity and that it may take months before any sale is concluded.

3

**CONCLUSIONS OF LAW**

1. **Allowance of First Federal's Unsecured Claim**

The main issue before the Court is whether a mortgage creditor is allowed to file an unsecured proof of claim for a deficiency without concluding a foreclosure proceeding or obtaining some other judicial determination regarding the exact amount of the deficiency claim. For the reasons set forth below, the Court finds that First Federal is allowed to file an unsecured claim at this time and the Objection will be overruled.

"[I]t is very important that a debtor's bankruptcy schedules and statement of affairs be as accurate as possible, because that is the initial information upon which all creditors rely." In re Coastal Plains, Inc., 179 F.3d 197, 208 (5th Cir. 1999). In this case, Debtors valued the Property at $220,000 and First Federal filed an unsecured proof of claim based on the valuation set forth in Debtors' bankruptcy schedules. According to Debtors' Schedule D, CitiMortgage holds a first priority mortgage in the amount of $293,981.91 and, therefore, an estimated unsecured deficiency claim in the amount of $73,981.91.[2] Thus, any foreclosure sale must yield almost $74,000 above Debtors' current estimated value of the Property before First Federal would receive payment towards its claim from the proceeds of the sale.

Although First Federal's recovery from a foreclosure sale of the Property is not impossible, it is improbable based on the picture painted by the Debtors themselves, which appears to be the reason why First Federal elected to recover from the bankruptcy estate via an unsecured claim at this time. If there is any form of recovery from the Property, First Federal indicated that it would credit such amounts to the debt owed by Debtors or refund any excess

---

[2] To date, CitiMortgage has not yet filed a proof of claim in this case. However, pursuant to § IV.B.6 of the Plan, Citi has a reasonable time after the surrender of the property to file an itemized proof of claim for any unsecured deficiency, which would extend to the time at which CitiMortgage completed its foreclosure of the Property.

4

amounts. Such an election is within First Federal's rights under South Carolina law as the holder of both the note from Debtors and a junior mortgage on the Property. See <u>Lever v. Lighting Galleries, Inc.</u>, 374 S.C. 30, 33, 647 S.E.2d 214, 216 (S.C. 2007) ("A mortgagee who has a note and a mortgage to secure a debt has the option to either bring an action on the note or to pursue a foreclosure action.").

While it is possible for the Court to value the Property as part of the Hearing on the Objection, neither party presented evidence towards such a finding. In light of the schedules setting value and prima facie validity of First Federal's claim, Debtors would bear the burden of proof on value at this point. In the absence of any evidence in support of the position that the value of the Property exceeds the lien of CitiMortgage, the Court finds that the value of the Property provided by Debtors in their bankruptcy schedules is the correct value of the Property for purposes of determining the amount of First Federal's unsecured deficiency claim. Based on First Federal's ability to decide the order in which it pursues its remedies against the Debtors and the Property, First Federal was entitled to elect to file an unsecured claim based on Debtors' obligations under the note at this time.

**2.    Amendments to Debtors' Schedules and Statements**

During the Hearing, counsel for the Trustee and Debtors addressed a related issue regarding the accuracy of Debtors' Schedules I and J and Statement of Current Monthly Income, all of which are necessary to determine Debtors' ability to comply with the Plan. If Debtors or their counsel are aware of any inaccuracies regarding the information contained in the bankruptcy schedules and/or Statement of Current Monthly Income, such inaccuracies should be corrected by the necessary amendments to the bankruptcy schedules and Statement of Current Monthly Income as soon as possible.

**3.    Debtors' Ability to Fund Chapter 13 Plan**

Based on the possibility that First Federal's unsecured claim as filed would be allowed, the Trustee also raised the issue of Debtors' ability to fund the Plan as confirmed because Debtors are seeking to retain certain non-exempt property.  Pursuant to 11 U.S.C. § 1325(a)(4), unsecured creditors must receive more than they would in a Chapter 7 liquidation in order for a Chapter 13 plan to be confirmable.  In this case, Debtors retained their interest in a CD in the amount of $35,637.90 and must pay at least that amount to their unsecured creditors.  With the addition of First Federal's claim, Debtors indicated that their likelihood of funding a 100% plan should be reduced because Debtors are currently living "rent free" in the Property and will eventually begin paying household expenses, thereby reducing the disposable income available for payment to the Trustee.

The changing circumstances of Debtors' income and expenses, the value paid to First Federal at some future foreclosure sale, and whether Debtors' Plan needs to be amended to lower the expected percentage dividend while still meeting the liquidation test appear to be subject to future events which cannot be forecasted at this time.  No party has provided any evidence that the Plan, as confirmed, no longer complies with the Bankruptcy Code.  Therefore, the Court will allow the Debtors to proceed under the terms of the Plan at this time.

## CONCLUSION

Based on the foregoing, it is therefore,

ORDERED that Debtors' Objection to the allowance of First Federal's proof of claim is overruled, and it is

FURTHER ORDERED that First Federal's unsecured claim against the Debtors in the amount of $77,996.92 is hereby allowed with any payment it receives from proceeds from the

sale of the Property being promptly credited towards its claim, and it is

FURTHER ORDERED that Debtors shall amend Schedule I; Schedule J, if necessary; and the Statement of Current Monthly Income within ten (10) days of the entry of this Order.

**AND IT IS SO ORDERED.**